UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA KOSS,<br><br>                Plaintiff,<br><br>v.<br><br>PALMER WATER DEPARTMENT,<br>PALMER FIRE DISTRICT NO. 1 AND<br>PALMER WATER DISTRICT NO. 1,[1]<br>WILLIAM COLE and CHARLES M.<br>CALLAHAN, III,<br><br>                Defendants. | CIVIL ACTION NO. 3:12-cv-30170-MAP |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DOCUMENTS RELATING TO SEXUAL HARASSMENT INVESTIGATION**

Defendants, Palmer Water Department, Palmer Fire District No. 1 and Palmer Water District No. 1, William Cole, and Charles M. Callahan, III ("Defendants"), hereby oppose Plaintiff's Motion to Compel Documents Relating to Sexual Harassment Investigation ("Motion to Compel") on the grounds that such documents are privileged attorney-client communications and/or work product. Accordingly, and for the reasons discussed below, Defendants respectfully request that the Court deny Plaintiff's Motion to Compel.

**I. Statement of Facts**

In January of 2012, Plaintiff, Lisa Koss ("Plaintiff" or "Koss"), alleged sexual harassment. In anticipation of litigation, and at the direction of and with the advice of Defendants' Counsel, Royal LLP, Henry Rigali, Esq. ("Rigali"), a sole practitioner and

---

[1] There is only one employer, not two or three employers, of the plaintiff and the entities listed in the above-referenced caption are not the correct legal names.

1

long-time outside counsel for Defendants, conducted an internal investigation of the allegations. Plaintiff's Counsel submitted a written statement of Koss's allegations prior to meeting with Rigali. During the investigation, Rigali took notes during witness interviews, including factual notes taken during his interview with Koss, which Plaintiff's Counsel was present for.

Although Plaintiff's Counsel attended the meeting Koss had with Rigali and had every opportunity to take his own notes during such meeting, Plaintiff requested Rigali's notes and Defendants have produced Rigali's factual notes. Defendants did not produce, and believe controlling law does not require Defendants to produce any of the documents, notes, or communications between Rigali and Defendants' Counsel, between Defendants' Counsel and the Board and/or members of management, and between Rigali and the Board and/or members of management as this information contains mental impressions, opinions, legal strategy, advice, and recommendations of both Defendants' Counsel and Rigali. All information and communications regarding the internal investigation were kept in confidence and shared only with Defendants' Counsel, Rigali, the Board, and members of management. Communications between Rigali, Defendants' Counsel, and the Board, which are misrepresented by Plaintiff in her Motion to Compel, include Rigali and Defendants' Counsel's mental impressions, opinions, legal strategy, advice, and recommendations regarding the investigation. Accordingly, said documents and communications are privileged attorney-client communications and/or work product; and the First Circuit Court of Appeals has not stated otherwise. Defendants provided a privilege log for the time period from Koss's complaint of harassment to present for communications related to the investigation Rigali conducted regarding Koss's allegations. In addition, Defendants have no

intention of using any of the documents or communications Plaintiff seeks to compel at trial.

Furthermore, Defendants have indicated, on multiple occasions, that Plaintiff may depose Rigali and inquire about the investigation he conducted regarding Koss's allegations. In fact, Rigali's deposition is currently scheduled for September 19, 2013 at 1:00 p.m. Thus, Plaintiff is not being denied access to the facts underlying the privileged material requested related to the investigation Rigali conducted.

## II. Argument

Plaintiff seeks to compel privileged documents and other communications in this case alleging that Defendants have waived any assertion of privilege in this matter because of Defendants' assertion of a Faragher-Ellerth Defense. *See Plaintiff's Motion to Compel* ("Plaintiff's Motion"). For authority for said assertion Plaintiff relies on a New York District Court Case, Angelone v. Xerox Corporation, (W.D.N.Y., Sept. 26, 2011). However, Angelone is not controlling in this matter, as the First Circuit has been silent on this issue (as well as the Second Circuit), and where the First Circuit has had the opportunity to voice its opinion on this issue it has declined to do so. *See* Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1 (1st Cir. 2012).

Furthermore, in similar matters, where the court has addressed the "Sword and Shield" issue, sometimes also called "at issue doctrine," the First Circuit still found, in accordance with the statutory authority Federal Rule of Civil Procedure 26(C)(3), that the party requesting otherwise privileged communications and documentation must show a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Newburyport Clamshell Alliance v. Pub. Serv. Co. of N.H., 827 F.2d. 13, 20 (1st Cir. 1988); *see also*

3

Hickman v. Taylor, 329 U.S. 495 (1947). Furthermore, public policy demands the preservation of the attorney-client privilege and work product doctrines, and "the presumption should be in favor of preserving the privilege." Id. "The privilege at issue here – the attorney-client privilege – serves important ends. Its root purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).

### A. Defendants bear the burden of showing that the privilege applies and upon that showing Plaintiff must prove that an exception applies

Defendants, as the party invoking attorney-client privilege and work product protection, bear the burden of showing that either applies. Vigil v. Vigilant Ins. Co., 674 F.3d 117 (1st Cir. 2012); Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc., 449 Mass. 609 (1st Cir. 2007). Once the privilege is established, the burden of proving any exception falls to Plaintiff. See F.D.I.C. v. Ogden Corp., 202 F.3d 454, 460 (1st Cir. 2000).

### B. The information plaintiff seeks in Her Motion to Compel is privileged information

The attorney-client privilege "extends to all communications made to an attorney or counselor and applied to by the party in that capacity, with a view to obtain his advice and opinion in matters of law, in relation to his legal rights, duties and obligations, whether with a view to the prosecution or defense of a suit or other lawful object." Hanover Ins. Co., 449 Mass. 609 (*quoting* Hatton v. Robinson, 31 Mass. 416, 421 (1834)). The privilege attaches to any communication between attorney and client in confidentiality for the purpose of seeking, obtaining, or providing legal advice or assistance. In Re Reorganization of Elec. Mut. Ins. Co., Ltd., 425 Mass. 419 (1st Cir.

4

1997).  "While the attorney-client privilege shields communications between attorney and client (and in some cases third parties), the work product doctrine protects an attorney's written materials and 'mental impressions.'" Comm'r of Revenue v. Comcast Corp., 453 Mass. 293 (2009) (*citing* Hickman, 329 U.S. 495).  The doctrine protects from discovery documents prepared by a party's representative "in anticipation of litigation." Id.  The protection can only be overcome if the party seeking discovery demonstrates "substantial need of the materials" and cannot obtain the "substantial equivalent" by other means without undue hardship.  Id.  Finally, an attorney or other representative's "mental impressions, conclusions, opinions, or legal theories" are afforded greater protection than "fact" work product, id., which includes "everything else that is eligible for protection as work product . . . ." In Re Grand Jury Subpoena, 220 F.R.D. 130, 145 (D. Mass. 2004).

The documents requested by Plaintiff in this matter are clearly privileged material.  The requested documents are attorney-client communications and work product, some of which is "opinion work product" thus, afforded greater protection than the remainder of privileged material which is considered "fact" work product, though it too is still protected.  Plaintiff makes absolutely no effort whatsoever to assert a "substantial need for the privileged material"; or that Plaintiff, in seeking a "substantial equivalent" will endure an "undue hardship" in seeking to attain the privileged material.  Accordingly, Plaintiff is not entitled to access Defendants' privileged material.

### C. According to the First Circuit Precedent in this Case the Defendants' Privilege has not been waived.

Furthermore, Plaintiff does not deny that the information she seeks in her discovery request is privileged.  She alleges only that the privilege that exists was

waived entirely; and consequently, that Defendants must produce everything that is relevant to the matter at hand.  Accordingly, Plaintiff has stipulated that the information sought is privileged; and with that stipulation, the burden lies with Plaintiff to prove that there is an exception that will overcome the privilege.  F.D.I.C., 202 F.3d at 460. Plaintiff seeks to establish this exception by using the aforementioned New York District Court case Angelone.  However, Angelone, has no precedential authority in Massachusetts, and thus, is not controlling in this particular matter.  Furthermore, the First Circuit has declined to give the Angelone "automatic implied waiver doctrine"[2] any precedential value time and time again.  *See eg.,* Vicor Corp., 674 F.3d at 16; Greater Newburyport Clamshell Alliance, 838 F.2.d at 20.

    The First Circuit has been silent on whether or not an implied automatic "blanket waiver" of privilege should be instituted when privileged materials are alleged to be put "at issue" in a case.  *See* Vicor Corp., 674 F.3d at 16.  In Vicor, the First Circuit was given the opportunity to establish precedent regarding the "at issue doctrine," the same doctrine that Plaintiff requests this Court to apply in this matter.  In that case, the appellants sought a blanket waiver of privilege for certain attorney-client communications and work product by asserting, in part, the "at issue" doctrine.  Both parties presented extensive arguments and supporting briefs in support of their respective arguments for and against the blanket waiver.  Despite having the opportunity to establish new law by holding that a blanket waiver of privilege shall be applied for the "at issue doctrine," the Vicor court declined to reach the issue and thus, willingly refrained from creating new First Circuit law; and so should this Court.

---

[2]This "implied automatic waiver" is also sometimes referred to as a "blanket waiver" and/or "automatic waiver rule."

6

The decision to refrain from establishing an implied "blanket waiver" was firmly established in <u>Greater Newburyport Clamshell Alliance</u>, 838 F.2d at 20.  In <u>Clamshell</u>, the First Circuit had to determine "which of two general approaches to the resolution of the issue of whether a party implicitly waives privileged information by litigating his claims in a civil case [thus, making the privilege information at issue in the case]. 'Courts have either found an automatic waiver of the privilege by raising the civil claim (the "automatic waiver rule") or have applied some form of a balancing test to determine whether the privilege is waived under the facts of the particular case.'" <u>Id</u> at 17.

The <u>Clamshell</u> court delved into several cases from various circuits before deciding that there would not be a blanket waiver of the privilege.  The court stated that such a waiver would "simply destroy a privilege, without consideration of the interests involved, and that is too harsh." <u>Id.</u> at 20.  The court further reasoned that:

> [T]he privilege ends at the point where the [Plaintiff] can show that the [Defendant's Affirmative Defense] and the probable defenses thereto, are so enmeshed in important evidence that will be unavailable to the [Plaintiff] if the privilege prevails.

<u>Id</u>.  Adopting the balancing test approach, the <u>Clamshell</u> court established a test for determining when a privilege is applied or waived:

> First, [the party seeking production of the privileged material] should demonstrate that the material to be discovered is relevant to their case. This showing should include an articulation of how the material could assist the preparation of their defense in a meaningful way . . . . Secondly, [the same party] should demonstrate why it would be unreasonably difficult for them to obtain the information elsewhere or that redundant evidence will be helpful to their case . . . .  Of course, the more the requested discovery would intrude into the privilege, the greater should be the showing of need and lack of reasonable alternative sources.

<u>Id</u> at 22.  The First Circuit has not favored implied automatic waivers and instead looks to weigh the interests of the parties in maintaining privilege versus the other party's

7

(seeking to eviscerate the privilege) substantial need for the privileged material and its undue burden in obtaining the "substantial equivalent" of the privileged material elsewhere.

Here, Plaintiff seeks to obtain "all documents relating to the investigation of Plaintiff's sexual harassment complaints." (Plaintiff's Motion at 1)  Plaintiff further states that "Defendant cannot raise a Faragher-Ellerth defense and then hide behind the attorney-client and work product privileges." Id.  However, as the aforementioned argument establishes, Defendant is not hiding.  The material Plaintiff seeks is privileged and no implied automatic "blanket" waiver applies here.  Accordingly, Plaintiff is not entitled to the privileged material she seeks.

Further, because the blanket waiver does not apply, Plaintiff must show that she has a substantial need for the privileged material, without which she would endure an undue burden in obtaining a substantial equivalent.  Plaintiff has made no such showing, because none exists.

Significantly, Defendants have not denied Plaintiff access to the facts underlying the privileged material requested related to the investigation Rigali conducted.  In this matter, the only information that Plaintiff does not have access to and that has not already been handed over is the aforementioned privileged material.  As discussed above, Plaintiff's Counsel was present for a portion of the investigation; specifically, Counsel attended Koss's interview.  Further, Defendants produced Rigali's factual notes from this interview, which Plaintiff's Counsel requested in discovery, even though he clearly already had the requested information, and thus, Rigali's notes were redundant.  Next, Plaintiff is fully able to take advantage of other discovery mechanisms still available to her.  Thus, Plaintiff is free to look beyond the work that Defendant has done

and do her own research.  She can serve subpoenas, conduct witness interviews, and depositions.  And in fact, as discussed above, Plaintiff plans to depose Rigali and Defendants' Counsel has indicated that Plaintiff's Counsel may inquire about the investigation during such deposition.  Thus, Plaintiff will have direct access to the factual information related to Rigali's investigation, leaving the only information not accessible to Plaintiff being that which is clearly privileged.  Furthermore, said remaining material is not relevant to or necessary for Plaintiff to establish and support her case; instead, a waiver of the privilege would prejudice Defendants to the unnecessary and unfair benefit to Plaintiff.

### D. Public Policy encourages a conservative approach to blanket waivers.

The privilege at issue here – the attorney-client privilege – serves important ends.  Its root purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  Upjohn Co._,_ 449 U.S. at 389.  When considering whether or not to waive privilege "the presumption is in favor of preserving the Privilege." Newburyport Clamshell Alliance, 827 F.2d. at 20.

Furthermore, the purpose of the Faragher-Ellerth defense is to encourage employers to create and establish policies to prevent discrimination and harassment in the workplace and to establish procedures to promptly correct any alleged discriminatory or harassing behavior, including conducting an investigation into such allegations.  Burlington Industries, Inc. v. Ellerth_,_ 524 U.S. 742, 758 (1998).  Accordingly, it would be contrary to the purpose of the Faragher-Ellerth defense to state that any such investigation conducted will automatically then be available for Plaintiff to

9

use as a sword against the investigating employer at trial, particularly when, as here, Plaintiff has not made even a semblance of a showing of need.

## Conclusion

Considering the aforementioned argument, Defendants respectfully request that this court Deny Plaintiff's Motion to Compel.

Respectfully Submitted,

/s/ Karina L. Schrengohst, Esq.
Karina L. Schrengohst, Esq.
BBO #681614
Counsel for the Defendants
Royal LLP
270 Pleasant Street
Northampton, Massachusetts  01060
Tel. (413) 586-2288/Fax (413) 586-2281

Dated:  September 5, 2013                    E-mail:  kschrengohst@royalllp.com

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Defendants' Opposition to Plaintiff's Motion to Compel Documents Relating to Sexual Harassment Investigation* was served upon the attorney of record for each other party via the Court's CM/ECF Electronic Case Filing System, on September 5, 2013.

/s/ Karina L. Schrengohst, Esq.
Karina L. Schrengohst, Esq.