# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LISA KOSS, | ) ) ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | Civil Action No. 12-30170-MAP |
| PALMER WATER DEPARTMENT, PALMER FIRE DISTRICT NO. 1, PALMER WATER DISTRICT NO. 1, WILLIAM COLE, and CHARLES M. CALLAHAN, III, | ) ) ) ) ) ) ) | |
| Defendants | ) | |

MEMORANDUM AND ORDER WITH REGARD TO
DEFENDANTS' MOTION FOR RECONSIDERATION OR, IN THE
ALTERNATIVE, FOR CLARIFICATION REGARDING ORDER ON
MOTION TO COMPEL DOCUMENTS RE: SEXUAL HARASSMENT
INVESTIGATION
(Document No. 32)
October 7, 2013

NEIMAN, U.S.M.J.

Presently before the court is Defendants' motion for reconsideration or, in the

alternative, for clarification of this court's September 16, 2013 order granting Plaintiff

Lisa Koss's motion to compel documents relating to her employer's investigation of her

sexual harassment complaints.  (*See* Document Nos. 22 and 30.)  At issue in Plaintiff's

original motion to compel were documents listed in Defendants' privilege log as

protected from disclosure by the attorney-client privilege and work-product doctrine.

(Document No. 24 Exhibit B.)  Plaintiff argued at the time that Defendants could not

raise a *Faragher-Ellerth* affirmative defense, namely, that "Defendants exercised

reasonable care to prevent and promptly correct any alleged harassing behavior and Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities to avoid harm," (*see* Answer (Document No. 9)); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998), and then assert attorney-client and work-product protection to shield documents relating to that investigation.

The court granted Plaintiff's motion to compel, ruling that "[b]y raising the *Faragher-Ellerth* defense . . . Defendants deliberately placed the internal investigation of Plaintiff's complaints at issue in this lawsuit" and that, "[a]ccordingly, as the court persuasively stated in *Angelone v. Xerox Corp.*, No. 09-CV-6019, 2011 WL 4473534, at *3 (W.D.N.Y. Sept. 26, 2011), Defendants 'can not rely on the thoroughness and competency of its investigation and corrective actions and then try and shield discovery of documents underlying the investigation by asserting the attorney-client privilege or work product protections.' " (Document No. 30.)  The court ordered Defendants to produce the requested documents within ten days.

Defendants subsequently filed the present motion for reconsideration.  The court agreed to conduct the requested *in camera* review of the documents in Defendants' privilege log and held a hearing on this motion on October 1, 2013.

DISCUSSION

The court stands by its previous ruling ordering production, except with regard to minor parts of some of the reviewed documents, which may be redacted as specified below.  As the court stated in its original order, "when a Title VII defendant affirmatively invokes a *Faragher-Ellerth* defense that is premised . . . on the results of an internal

investigation, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation." *Angelone*, 2011 WL 4473534, at \*2.

Defendants' present arguments to the contrary are unpersuasive and the cases cited by them, *McKenna v. Nestle Purina PetCare Co.*, No. 2:05-cv-0976, 2007 WL 433291 (S.D. Ohio Feb. 5, 2007) and *Waugh v. Pathmark Stores, Inc.*, 191 F.R.D. 427 (D. N.J. 2000), are distinguishable. In contrast to *McKenna* and *Waugh*, the documents reviewed by the court reflect ongoing, active participation in the investigation on the part of attorneys at Royal LLP in the form of guidance, advice, and direction to Henry Rigali, the individual charged by Defendants to investigate and report on Plaintiff's sexual harassment claims.

In *McKenna*, the court denied the plaintiff's motion to compel because the documents relating to the employment discrimination investigation constituted advice by counsel *to its client* concerning the appropriate response to discrimination allegations of *another employee*. 2007 WL 433291, at \* 4 The court explained that "[i]f an attorney had been consulted about an investigation but did not himself or herself conduct interviews, make disciplinary decisions, or *otherwise participate in the investigation itself*, the contents of the attorney's advice *to the client* about the investigative process and the decisions made by the employer remain privileged." *Id.* (emphases added). Even then, the court stated, the plaintiff was "free to pursue in discovery the question of how, if at all, [the attorneys] were involved in an investigation of his claims of harassment and to seek disclosure of any documents which might have been generated

3

by attorneys who acted on [the client-defendant's] behalf in conducting such an investigation, as opposed to simply providing legal advice to [the client-defendant] during the course of that investigation." *Id.* As the vast bulk of the documents at issue in the case at bar reveal -- documents which Defendants themselves asked be reviewed by the court *in camera* -- Royal LLP's attorneys' advice was not confined to Defendants, their clients, and their actions were intimately connected to, if not controlling of, the investigation by Mr. Rigali.

In *Waugh*, the court also denied the plaintiffs' motion to compel documents relating to an employment discrimination investigation. 191 F.R.D. at 428. There, the employer, following an employment discrimination investigation, consulted an attorney about the results of the investigation and remediation; at most, the attorney e-mailed the investigator asking for an update on "the status of this matter" and attended a meeting at which the investigator reported her findings. *Id.* at 429. The court found the requested materials privileged, reasoning that, under the facts presented, the attorney's two brief contacts were reflective of his role as a legal advisor only. *Id.* at 431.

In contrast, the documents reviewed here demonstrate that the attorneys at Royal LLP, although not personally conducting interviews, not only directed and collaborated with Mr. Rigali, but exercised significant control and influence over him throughout the investigation. As the documents make obvious, the Royal LLP attorneys were part and parcel of the investigation which goes to the heart of Defendants' affirmative defense. These are the very types of documents which were ordered produced in *Angelone*, 2011 WL 4473534, at *3. *See also McGrath v. Nassau Cnty. Health Care Corp.*, 204 F.R.D. 240, 245-46 (E.D.N.Y. 2001) (concluding that defendant,

4

having invoked a *Faragher-Ellerth* defense, had waived both its attorney-client and

work-product privileges with regard to its investigation of sexual harassment complaint).

To be sure, Defendants assert that they have no intention of using at trial the

documents not already produced, thereby requiring continuing non-disclosure. In

support of this argument, Defendants cite *Reid-Lamb v. Time Warner Entertainment

Co.*, No. 3:10-CV-77-FDW-DCK, 2010 WL 5128632, at *2 (W.D.N.C. Dec. 10, 2010),

where the court held that certain documents were protected from disclosure because

there was no evidence that the defendant used, or intended to use, the documents to

defend its case. The context of the documents at issue in *Reid-Lamb*, however,

including the timing and circumstances of their creation, is not sufficiently clear to

provide any guidance in the instant matter.

Nevertheless, Defendants' argument with respect to their use of documents has

some resonance with respect to certain of Royal LLP's and Mr. Rigali's post-

investigation communications. *See Angelone*, 2011 WL 4473534, at *3 ("As to the

remaining documents submitted by [the defendant for *in camera* review], they appear to

be documents created *after* the [Policy Violation and Investigation Report ("PVIR")] was

issued, and indeed, most of them were prepared after [the plaintiff] filed her first

discrimination complaint with the EEOC. Assuming [the defendant's] *Faragher-Ellerth*

defense will not refer to or rely on these post-PVIR documents or the adequacy of any

post-PVIR investigation" the defendant did not waive the attorney-client privilege or

work-product protection). Unfortunately for Defendants, however, the dividing line

between pre and post-investigative communications is not clear here. While Mr. Rigali's

report itself is dated May 10, 2012, certain of the documents after that date appear to be

5

a continuing part of the investigation.

Still, while Defendants' affirmative defense waives the attorney-client privilege and work-product protection for the bulk of the documents submitted for *in camera* review, the court concludes that some redactions are nonetheless appropriate, namely, those parts which contain communications directly between Royal LLP and Defendants, as distinct from Mr. Rigali, and/or constitute materials unrelated to the investigation. Those redactions include the following:

1.  February 6, 2010 e-mail at 4:42 from "I'm told" to "with it";

2.  April 11, 2012 e-mail at 5:18 from "We cannot" to "like to proceed";

3.  April 11, 2012 e-mail at 4:17 in the first paragraph from "and (2)" to "changes"; in the third through ninth paragraphs from "The bulk" to "hours"; from the final list from "2. Karina" to "hours"; and from the final sentence from "and" to "hours";

4.  April 24, 2012 e-mail at 2:20 from "Query whether" to "department office";

5.  April 24, 2012 e-mail at 3:29 from "I agree" to "business call";

6.  May 14, 2012 e-mail at 6:02 from "Please find" to "Thank you"; and

7.  The entire letter on page 36 of 53 (according to the pagination in the court's documents).

Although these redactions are included in documents in which the investigation is discussed, they are distinct and reflect Mr. Rigali's and/or Royal LLP's entirely separate and unrelated roles as counsel to Defendants.

CONCLUSION

For the reasons stated, Defendants' motion is ALLOWED in part and DENIED in part as described above.  With the above-described redactions in mind, the documents previously ordered are to be produced forthwith.[1]


IT IS SO ORDERED.

October 7, 2013

/s/   Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

---

[1] The court notes that the parties agreed at oral argument that two handwritten documents, which had been provided by Defendants to Plaintiff with some redactions, would be produced in unredacted form subject to a confidentiality agreement.